LABOR RELATIONS COMMISSION *vs.* THE CLOVER LEAF
CORPORATION.[1]

Hampden.    December 8, 1976. — March 2, 1977.

Present: HENNESSEY, C.J., QUIRICO, BRAUCHER, KAPLAN, &
WILKINS, JJ.

*Labor and Labor Union,* Election.  *Administrative Agency.  Jurisdiction,* Judicial review of administrative action.

Where an employer failed to file with the Labor Relations Commission
any objection with respect to a representation election of its employees within five days after the tabulation of the ballots, it was
foreclosed from raising the issue of the validity of the commission's
certification of the election results in a proceeding on an unfair labor practice charge before the commission or in a proceeding under
G. L. c. 150A, § 6 (*f*). [75-76]

PETITION filed in the Superior Court on April 17, 1973.

The case was heard by *Moriarty, K. B. Smith,* and
*Griffin,* JJ.

After review was sought in the Appeals Court, the Supreme Judicial Court, on its own initiative, ordered direct
appellate review.

*Frederick V. Casselman* for the Labor Relations Commission.

HENNESSEY, C.J.    The Labor Relations Commission
(commission) appeals from a decree of a three judge panel
of the Superior Court, which set aside a decision of the
commission ordering The Clover Leaf Corporation (Clover
Leaf) (doing business as The Howard Johnson Motor

[1] There were two cases which arose out of cross-petitions with respect to the same order of the commission and were integrally related.
The cases were consolidated for trial in the Superior Court. Clover
Leaf filed a petition for judicial review of the commission's decision
and order pursuant to G. L. c. 150A, § 6 (*f*), and the commission filed
a cross-petition for enforcement of the same order pursuant to G. L.
c. 150A, § 6 (*e*).

Lodge) to cease and desist from refusing to bargain collectively with the certified bargaining representative of its employees, and remanding the case to the commission for further proceedings. We conclude that the commission's order should be enforced, and we therefore reverse.

We first set forth the circumstances in which this case arose. On September 17, 1970, the Chicopee, Holyoke, Westfield Bartenders, Hotel, Motel, Cafeteria and Restaurant Employees International Union, Local 116, AFL-CIO (the union) filed a petition with the commission pursuant to G. L. c. 150A, § 5 (*c*), seeking certification as the exclusive collective bargaining representative of certain Clover Leaf employees. The commission held a hearing on the petition and subsequently determined that the petition raised a question of representation. It therefore directed that a representation election be held among the employees in the designated bargaining unit, and an election was conducted by agents of the commission. The union obtained a majority of the votes cast but only a minority of the eligible employees participated in the election.[2] Neither party filed objections to the conduct of the election, and the commission therefore on March 30, 1971, certified the union as the collective bargaining representative for the employees in the bargaining unit.

Shortly thereafter the union filed an unfair labor practice charge with the commission alleging that Clover Leaf had refused to bargain collectively with the union since March 30, 1971, and that it had failed to respond to communications from the union dated April 2, 1971, and April 14, 1971, which requested a meeting for the purpose of entering into collective bargaining negotiations. The commission conducted an investigation and issued a complaint of unfair labor practice against Clover Leaf on November 21, 1972. After notice to the parties the commission held a formal hearing on the charge on December 19, 1972, at

---

[2] The results of the election were as follows: Total number eligible 21; total ballots cast 7; ballots cast for the union 5; ballots cast against the union 0; ballots protested 1; blank and void ballots 1.

which Clover Leaf stipulated that it had refused to bargain with the union. Clover Leaf argued that the company had no duty to bargain with the union because the union had not received the votes of a majority of all eligible voters and that the commission had therefore erred in certifying the election. On January 18, 1973, the commission issued its decision finding that Clover Leaf had unlawfully refused to bargain in good faith, and ordered Clover Leaf to begin negotiations immediately on request.

Clover Leaf subsequently filed a petition in the Superior Court pursuant to G. L. c. 150A, § 6 (*f*), seeking judicial review of the commission's decision and order. The commission cross-petitioned under G. L. c. 150A, § 6 (*e*), for enforcement of its order.

The three judge panel held that a bargaining representative may be selected by a majority of the employees who vote in an election even if the number who actually vote is less than a majority of those employees eligible to vote, provided that the election was actually representative. The panel further held that whether the election was actually representative was a question of fact for the commission to determine. It vacated the commission's order and remanded the case to the commission for further proceedings directed to that issue.

The commission contends that Clover Leaf could not raise properly the issue of the validity of the commission's certification of the union as collective bargaining representative, either at the proceedings before the commission on the unfair labor practice charge or before the Superior Court, because it failed to file timely objection to the conduct of the election as required by regulations of the commission, and that therefore the remand order is futile and unnecessary because such failure on the part of Clover Leaf forecloses consideration by the commission on remand of evidence pertaining to the validity of its certification of the election results.

As a preliminary matter we conclude that the case is ripe for review. In the view we take of this case further administrative action would serve no purpose other than to

delay further the resolution of this already protracted litigation. See *Gallagher* v. *Metropolitan Dist. Comm'n,* 371 Mass. 691 (1977); *Massachusetts Probation Ass'n* v. *Commissioner of Administration,* 370 Mass. 651 (1976).

The Rules and Regulations Relating to the Administration of the Labor Relations Law (regulations) art. 2, § 9 (1970), provide: "Where the Commission determines that an election by secret ballot shall be held, it shall direct that such election be conducted upon such terms and in such manner as it may specify. Within five days after the tabulation of the ballots, any party to the proceeding may file with the Commission any objection relative to the election .... If it appears to the Commission that any such objection raises a substantial and material issue with respect to the conduct of the election, it shall issue and cause to be served upon the parties a notice of hearing on said objection before the Commission or a member thereof.... If no objection raising a substantial and material issue with respect to the conduct of the election is filed, the Commission shall proceed to certify to the parties to the proceeding the name or names of the representatives that have been designated or selected or to make other disposition of the matter."

We conclude that Clover Leaf was foreclosed from raising the issue of the validity of the commission's certification of the election results in the proceedings on the unfair labor practice charge before the commission. No reason appears in the record for the failure of Clover Leaf to raise its objections to the election in the manner provided by the regulations and, indeed, since the basis of Clover Leaf's objection is apparent on the face of the ballot tabulation we can conceive of no valid reason for such failure. We hold that unless extraordinary circumstances appear which under the statute excuse the failure to file timely objections relative to the certification of the results of an election a party may not subsequently raise such objection in a collateral proceeding.[3]

---

[3] Cf. G. L. c. 150A, § 6 (*e*), (*f*).

Article 2, § 9, of the regulations is designed to ensure that objections addressed directly to the fair conduct of an election may be investigated and resolved promptly while the circumstances under which the election was conducted are still fresh and subject to meaningful exploration.[4] Prompt and certain certification of the election results and orderly commencement of collective bargaining are essential to the achievement of the purposes of the labor relations statute as expressed in G. L. c. 150A, § 1. The provision of art. 2, § 9, of the regulations, which empowers the commission to certify the elected bargaining representative if no objections are filed within five days, is directed to this purpose. It is difficult to imagine a case less conducive to the effectuation of the policies and purposes of the labor relations statutes than the one now before us, in which collective bargaining has been delayed for six years after the election and certification of the bargaining representative. Our conclusion is consistent with the practice of the National Labor Relations Board under its analogous regulation. Rules and Regulations, Series 8, 29 C.F.R. § 102.69 (1976). See, e.g., *Jason/Empire, Inc.,* 212 N.L.R.B. 137 (1974), enforced in *Jason/Empire, Inc.* v. *NLRB,* 518 F.2d 7 (10th Cir. 1975).

Clover Leaf stipulated that it had refused to bargain with the certified bargaining representative, and apparently raised no objections other than those which it properly should have raised as objections to the conduct of the election as provided by regulation. It was, therefore, within the discretion of the commission to refuse to consider such objections since no unusual or extraordinary reasons appeared to excuse failure to file timely objection.

Clover Leaf was similarly precluded from raising the

---

[4] Such objections directed to the manner and circumstances under which the election was conducted may be distinguished from objections directed toward other agency action, for example, objections regarding the commission's designation of the appropriate bargaining unit which may be raised in the context of an unfair labor practice charge following certification of the bargaining representative. See *Jordan Marsh Co.* v. *Labor Relations Comm'n,* 316 Mass. 748, 749 (1944); *Pittsburgh Plate Glass Co.* v. *NLRB,* 313 U.S. 146, 152 (1941).

same objection in the Superior Court proceedings. The statutory provisions governing judicial review of the commission's orders, G. L. c. 150A, § 6 (*e*), (*f*), make applicable to such review the standards for judicial review of administrative agency proceedings set forth in G. L. c. 30A, § 14 (7),[5] with the additional proviso that "[n]o objection that has not been urged before the commission . . . shall be considered by the court, unless the failure or neglect to urge such objection shall be excused because of extraordinary circumstances." G. L. c. 150A, § 6 (*e*), as amended through St. 1954, c. 681, § 10.

The objections raised by Clover Leaf before the Superior Court panel were not considered by the commission in its unfair labor practice charge proceedings because Clover Leaf had waived its opportunity to present them and had made no showing of excusable circumstances for its failure. Such objections were not, therefore, properly before the panel. Cf. *NLRB* v. *Ochoa Fertilizer Corp.*, 368 U.S. 318 (1961); *NLRB* v. *Cheney Cal. Lumber Co.*, 327 U.S. 385 (1946); 29 U.S.C. § 160 (e) (1970).

The commission's finding of a refusal to bargain in good faith on the part of Clover Leaf was supported by substantial evidence. There is no suggestion in the record of any unfairness in the conduct of the representation election which would bring the actual representativeness of the election into question and, absent any such suggestion or any timely objection to the conduct of the election, it was

[5] The Superior Court on review may thus grant "such temporary relief or restraining order as . . . [it] deems just and proper, and . . . make and enter . . . a judgment enforcing, modifying, and enforcing as so modified, or setting aside in whole or in part the order of the commission." G. L. c. 150A, § 6 (*f*), as appearing in St. 1973, c. 1114, § 15. The commission's decision may be set aside or modified on review if it is "(a) In violation of constitutional provisions; or (b) In excess of the statutory authority or jurisdiction of the agency; or (c) Based upon an error of law; or (d) Made upon unlawful procedure; or (e) Unsupported by substantial evidence; or (f) Unwarranted by facts found by the court on the record . . . in those instances where the court is constitutionally required to make independent findings of fact; or (g) Arbitrary or capricious, an abuse of discretion, or otherwise not in accordance with law." G. L. c. 30A, § 14 (7), as appearing in St. 1973, c. 1114, § 3.

the duty of the commission to certify the elected bargaining representative. The commission did not abuse its discretion in so doing.

It follows that the decree entered by the three judge panel of the Superior Court remanding the case to the commission for further proceedings must be vacated. A judgment is to be entered enforcing the commission's order directing Clover Leaf to cease and desist from refusing to bargain collectively with the certified bargaining representatives of its employees.

*So ordered.*